1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15

HENRY CHILDRESS, *et al.*,

      Plaintiffs,

   v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, *et al.*,

      Defendants.

Case No.  C10-059RSL

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY
JUDGMENT

16
17

## I.  INTRODUCTION

18
19
20
21
22
23
24

    This matter comes before the Court on a motion for summary judgment filed by defendant
Liberty Mutual Fire Insurance Company ("Liberty Mutual") and a cross motion for partial
summary judgment filed by plaintiffs Henry and Deborah Childress.  Liberty Mutual seeks to
dismiss all of plaintiffs' claims, and plaintiffs seek summary judgment on their claim that
Liberty Mutual breached their insurance contract by attempting to unilaterally add additional
coverage to plaintiffs' homeowners policy, then cancelling the policy when plaintiffs failed to
pay for the additional coverage.  At the parties' request, the Court heard oral argument in this

25
26
27
28

matter on February 3, 2011.[1]

For the reasons set forth below, the Court grants plaintiffs' motion and denies Liberty Mutual's motion.

## II. DISCUSSION

**A.    Background Facts.**

On January 1, 2008, Henry Childress spoke with a Liberty Mutual sales representative to purchase a homeowners policy of insurance.  Based on the telephone conversation and the information Mr. Childress provided, Liberty Mutual generated and provided a quote of $1,424.00 per month.  On that day, Liberty Mutual e-mailed Mr. Childress several documents, including an application form and an earthquake coverage form.  The cover letter stated that he was required to complete and return all forms "[t]o guarantee that you receive uninterrupted coverage" and that the earthquake coverage form was "Required to validate rating variables and other pertinent information."  Declaration of Carla Crick, (Dkt. #49-1) ("Crick Decl."), Ex. 2. The top of the earthquake coverage form, in all capital letters, stated, "Your policy does not include coverage against the peril of earthquake."  Id.  Underneath was the following language, "Earthquake coverage, subject to policy provisions, may be purchased for an additional premium.  If the coverage is selected and premium paid, we will insure for direct physical loss to property covered under Section 1 caused by earthquake . . . ."  Id.  The page listed available earthquake deductibles and stated, "If coverage is being requested, please select a deductible option from those listed above."  Id.  Liberty Mutual placed an "x" in the box next to the statement, "I reject Earthquake coverage."  Id.  The sales representative who spoke with Mr. Childress on that day has filed a declaration stating that the inclusion of the earthquake form in the package "confirms that I discussed this form with the customer, was advised that the

---

[1] Plaintiffs have also sued additional defendants who are not parties to these cross motions: Meritplan Insurance Company, Countrywide Home Loans, Inc., BAC Home Loans Servicing, LP, and Bank of America, N.A.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 2

1     customer rejected this coverage and that I advised him that he needed to return the signed

2     rejection of earthquake coverage with the application within ten days for the rejection to be

3     effective."  Crick Decl. at ¶ 6.  Mr. Childress states that he asked for "basic" coverage over the

4     phone and does not recall any discussion of earthquake coverage.  Childress Dep. at p. 65.

5         The next day, Liberty Mutual mailed to plaintiffs a copy of the policy, a policy

6     declarations page showing the initial premium due, and another copy of the earthquake coverage

7     form.  Declaration of Robin Smith, (Dkt. #32) ("Smith Decl."), Ex. 2.  The cover letter stated,

8     "Your homeowners policy is enclosed.  It describes the coverage you selected . . . ."  Id.  The

9     policy was effective as of January 2, 2008 and it excluded earthquake coverage.  Meitler Dep. at

10    pp. 35-36.  Defendant Countrywide Home Loans, plaintiffs' mortgagee, paid the initial premium

11    on or around January 14, 2008, and Liberty Mutual accepted the payment.

12        Liberty Mutual has an internal policy requiring a signed application that specifically

13    selects or rejects earthquake coverage to avoid misunderstandings regarding the scope of

14    coverage.  Declaration of Robbie Meitler, (Dkt. #30) ("Meitler Decl.") at ¶ 4.  On February 19,

15    2008, the policy came up for review.  At that time, plaintiffs had not submitted a signed

16    application or a written declination of earthquake coverage.  Liberty Mutual sent a "courtesy" e-

17    mail to Mr. Childress stating, "As of today, we have not received the signed application forms

18    back in our office.  We do need to receive the signed forms back within 5 business days or your

19    coverage will increase in accordance with state insurance regulations."  Smith Decl., Ex. 5.  Mr.

20    Childress did not return either document because he thought it was a "scam."  Declaration of

21    Henry Childress, (Dkt. #26-2) ("Henry Childress Decl.") at ¶ 8.  Because the signed forms were

22    not returned, on February 29, 2008, Liberty Mutual issued an endorsement that added earthquake

23    coverage to the policy and provided notice of the addition to plaintiffs.  Smith Decl. at ¶ 6, Ex. 6

24    (noting a premium increase of $353.00 as a result of the additional coverage).  On the same day,

25    Liberty Mutual e-mailed Mr. Childress a copy of the policy application and another copy of the

26    earthquake form with a check next to the box stating, "I reject earthquake coverage."  Id., Ex. 8.

27

28    ORDER REGARDING CROSS MOTIONS
      FOR SUMMARY JUDGMENT - 3

1  Mr. Childress did not sign or return the form.

2       On or around March 3, 2008 and again on April 2, 2008, Liberty Mutual generated and

3  mailed premium notices to plaintiffs for the earthquake premium, reflected in the notices as

4  "new policy balance" and "Endorsement 01."  Smith Decl., Exs. 9, 10.  The notices also stated

5  that payment was required to ensure uninterrupted coverage.  After receiving the second notice,

6  Mr. Childress called Liberty Mutual to question why he was being billed for earthquake

7  coverage.  He was informed that the coverage was added because he failed to return the signed

8  application and signed earthquake coverage declination form.  Smith Decl. at ¶ 11.  Although

9  Liberty Mutual sent him duplicate forms at his request, he did not sign them and return them to

10  Liberty Mutual.  Subsequently, monthly premium invoices were generated and mailed to

11  plaintiffs for May to September 2008.  Plaintiffs did not pay the outstanding premium, return the

12  signed forms, or contact Liberty Mutual again.  Mr. Childress believed that because he had paid

13  the annual premium in advance to Countrywide, which was copied on all of the notices, that

14  Countrywide would respond and make the payments.  Henry Childress Decl. at ¶ 10.

15       On September 25, 2008, Liberty Mutual's automated system generated a cancellation

16  notice that was issued to plaintiffs cancelling their policy for nonpayment of the earthquake

17  premium effective October 10, 2008 unless they paid the current amount due.  Smith Decl., Ex.

18  13.  Plaintiffs did not pay the allegedly outstanding premium or contact the company.  Their

19  policy was cancelled effective October 10, 2008 for nonpayment of the earthquake premium.[2]

20       Thereafter, plaintiffs suffered a devastating home fire on December 21, 2008.  Liberty

21  Mutual refused to pay for the loss because its policy was no longer in effect.  The policy states

22  that it may be cancelled for nonpayment: "When you have not paid the premium we may cancel

23  at any time by notifying you at least 10 days before the date cancellation takes effect."  Smith

24

25       [2] After the Liberty Mutual policy was cancelled, Countrywide obtained a lender placed

26  policy for the home to protect its security interest.  Declaration of Sarah Eversole, (Dkt. #29) Ex. 3.

27

28  ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 4

1    Decl., Ex. 3 at p. 18 of 19.

2         Plaintiffs originally filed this case in King County Superior Court, and defendants

3    removed it to this Court in January 2010 based on diversity jurisdiction.  Plaintiffs assert claims

4    for breach of contract, bad faith, negligence,[3] and violations of Washington's Administrative

5    Code and Consumer Protection Act.

6    **B.    Summary Judgment Standard.**

7         Summary judgment is appropriate when, viewing the facts in the light most favorable to

8    the nonmoving party, the records show that "there is no genuine issue as to any material fact and

9    that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the

10   moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

11   fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file,

12   "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S.

13   317, 324 (1986).

14        All reasonable inferences supported by the evidence are to be drawn in favor of the

15   nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

16   "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary

17   judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

18   626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the

19   non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d

20   1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving

21   party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id.

22   at 1221.

23   **C.    Analysis.**

24        Because the Court's jurisdiction is based on diversity, it applies Washington law. See,

25   ────────────────

26        [3] The parties' memoranda do not address the negligence claim, so that claim is not

27   currently before the Court.

28   ORDER REGARDING CROSS MOTIONS
     FOR SUMMARY JUDGMENT - 5

1  e.g., Jorgensen v. Cassidy, 320 F.3d 906, 914 (9th Cir. 2003).  Under Washington law, summary

2  judgment is proper where the decision turns on the interpretation of an insurance policy, which is

3  a question of law.  See, e.g., Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 423-24 (1997).

4  **1.  Breach of Contract Claim.**

5  Pursuant to the terms of the policy, Liberty Mutual was permitted to cancel it "only for

6  the reasons stated below."  Policy at p. 18.  One of those listed reasons is nonpayment of

7  premium.  It is undisputed that plaintiffs paid the premiums for the basic coverage they

8  requested.  Liberty Mutual's contention that it properly cancelled the policy for nonpayment of

9  the earthquake premium begs the question of whether the earthquake premium was actually due.

10  Liberty Mutual contends that its representative informed Mr. Childress during his initial

11  telephone call that the company required a signed earthquake coverage declination form to

12  waive coverage, so that term was part of the offer of insurance.  That term, however, was not

13  made a part of the contract, which was effective January 2, 2008.  Liberty Mutual admits that it

14  issued plaintiffs a policy without earthquake coverage.  Meitler Dep. at pp. 35-36.  In

15  Washington, an insurance policy must contain the entire contract.  RCW 48.18.190 ("No

16  agreement in conflict with, modifying, or extending any contract of insurance shall be valid

17  unless in writing and made a part of the policy.").  An insurer is bound by the premium rate

18  stated in the policy and may not alter it mid-term absent certain conditions not present in this

19  case.  RCW 48.18.180(1) & (2); WAC 284-30-590(2).  A telephone conversation cannot alter

20  the terms of the policy where it was not made a part of the policy.  National Indem. Co. v.

21  Smith-Gandy, Inc., 50 Wn.2d 124 (1957) (finding that "the telephone conversation and the letter

22  of confirmation did not change the terms of the policy subsequently issued.").  Therefore, Ms.

23  Crick's conversation with Mr. Childress did not alter the terms of the policy.  Nothing in the

24  policy or application stated that Liberty Mutual could or would add earthquake coverage and

25  correspondingly increase plaintiffs' premium if they failed to return the form.  Even if extrinsic

26  evidence could be used to alter the policy's terms, the January 1 and 2, 2008 letters upon which

28  ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 6

1    Liberty Mutual relies do not warn of a premium increase.  Instead, those letters stated that failure
2    to return the earthquake form could result in cancellation of coverage.  The company's
3    subsequent cancellation of the policy was not due to the failure to return the forms; it was due to
4    the nonpayment of the earthquake premium.  Although the effect of cancellation was the same,
5    the legal import is not.  Quite simply, neither the policy nor applicable law permitted Liberty
6    Mutual to unilaterally add the previously declined earthquake coverage and increase the
7    premium as they did in this case.[4]  Liberty Mutual therefore breached the contract.

8          Although the case law is scant, the Washington Supreme Court has held that a
9    cancellation of an insurance policy must "be in accordance with the provisions of the policy to
10   be effective."  Blomquist v. Grays Harbor County Med. Serv. Corp., 48 Wn.2d 718, 721 (1956)
11   (quoted in Olivine Corp. v. United Capitol Ins. Co., 147 Wn.2d 148 (2002) (holding that the
12   insurer's failure to follow statutory notice provisions left the policy in effect)); see also Franklin
13   v. Northern Life Ins. Co., 4 Wn.2d 541 (1940) (explaining that when an insurer wrongfully
14   cancels a policy, the insured may recover its value, have the policy adjudged in force, or tender
15   premiums and if refused, wait until the policy becomes payable and test forfeiture in a proper
16   action).  Because the cancellation in this case was not in accordance with the policy or with
17   applicable law, it was ineffective.  Accordingly, it remained in effect when plaintiffs suffered
18   their loss.  The Court therefore grants summary judgment in plaintiffs' favor on their breach of
19   contract claim.

20

21

_____

22         [4] Liberty Mutual also alleges that plaintiffs accepted the benefit of the earthquake
23   coverage and were therefore bound to pay for it.  Liberty Mutual's Reply at p. 11 (citing
     Restatement Second, Contracts § 69(3)) (stating inaction can constitute acceptance of an offer
24   where "an offeree takes the benefit of offered services with reasonable opportunity to reject them
     and reason to know that they were offered with the expectation of compensation.").  There is no
25   authority for applying that provision in the insurance context, where a clear statute requires all
26   terms to be contained in the policy.  Even if it were applicable, plaintiffs never made a claim for
     earthquake coverage or otherwise accepted its benefits.
27

28   ORDER REGARDING CROSS MOTIONS
     FOR SUMMARY JUDGMENT - 7

1

### 2.     Consumer Protection Act and Bad Faith Claims.

2    Liberty Mutual contends that plaintiffs cannot establish any of the five elements

3    necessary to state a CPA claim: (1) an unfair or deceptive act or practice, (2) in trade or

4    commerce, (3) that impacts the public interest, (4) which causes injury to a party in his business

5    or property, and (5) which injury is causally linked to the unfair or deceptive act.  Hangman

6    Ridge Training Stables, Inc. v. Liberty Title Ins. Co., 105 Wn.2d 778, 784-85 (1986).  By

7    statute, the "business of insurance is one affected by the public interest," RCW 48.01.030, so the

8    third element is met.  The second element is also met because the practices at issues occurred in

9    trade or commerce.  Although Liberty Mutual argues that plaintiffs have not suffered damages,

10    they have sufficiently demonstrated that the uninsured damage to their home constitutes an

11    injury to support their CPA and bad faith claims.

12    Plaintiffs contend that Liberty Mutual violated WAC 284-30-330(4)[5] by "[r]efusing to

13    pay claims without conducting a reasonable investigation."  Plaintiff argue that a reasonable

14    investigation would have shown that plaintiffs had prepaid their annual premium "and that the

15    cancellation was the result of earthquake coverage being imposed without their consent."

16    Plaintiffs' Cross Motion at p. 22.  The regulation, however, contemplates a reasonable factual

17    investigation, which plaintiffs do not address.  Plaintiffs' claim is premised on defendant's

18    wrongful premium increase, not an inadequate factual investigation.  Therefore, the regulation is

19    inapplicable.

20    Plaintiffs also argue that Liberty Mutual violated WAC 284-30-590(2), and the violation

21    constitutes a per se unfair trade practice violation for purposes of the CPA.  That regulation

22    provides, "In the unusual situation where a contract permits a midterm change of rates or terms,

23

_____

24    [5] Plaintiffs also contend that Liberty Mutual violated the Insurance Fair Conduct Act
     ("IFCA") by violating the insurance regulations.  The Court denied plaintiffs' belated request to
25    amend their complaint to add an IFCA claim.  Even if that claim were properly asserted, it would
     fail.  Plaintiffs premise their IFCA claim on defendant's alleged failure to comply with WAC
26    284-30-330 and WAC 284-30-590(2), but they have not shown a violation of either provision.

27

ORDER REGARDING CROSS MOTIONS
28    FOR SUMMARY JUDGMENT - 8

other than in connection with a renewal, it is an unfair practice to effectuate such change with

less than forty-five days advance written notice to the named insured, or to utilize a contract

provision which is not set forth conspicuously in the contract under an appropriate caption of

sufficient prominence that it will not be minimized or rendered obscure." That regulation,

however, is inapplicable because, as plaintiffs contend, the policy does not permit a midterm

change or rates or terms.

Instead, Liberty Mutual violated RCW 48.18.180(1) and (2), which provide:

> (1) The premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof.

> (2) No insurer or its officer, employee, appointed insurance producer, or other representative shall charge or receive any fee, compensation, or consideration for insurance which is not included in the premium specified in the policy.

In this case, Liberty Mutual charged plaintiffs for an additional premium that was not included in

the premium set forth in the policy. In fact, until it billed plaintiffs for the earthquake coverage,

Liberty Mutual never informed them of the amount of such coverage. A violation of the statute,

however, does not constitute a per se unfair or deceptive trade practice. For that reason,

plaintiffs must show that Liberty Mutual's conduct has the capacity to deceive a substantial

portion of the public. Hangman, 105 Wn.2d at 785. That issue presents an issue of fact. Id. at

789-90; Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226-27

(2006). Although Liberty Mutual states that its forms, letters, and e-mail clearly informed

plaintiffs that a failure to return the form would result in the addition of coverage and premium

increase, a review of the actual documents reveals otherwise. In fact, the earthquake form itself

clearly states that the coverage had been declined and explained how it could be added.

Moreover, the e-mail Liberty Mutual sent to plaintiffs threatened a rate increase "in accordance

with state insurance regulations," suggesting to the recipient that Liberty Mutual's actions were

compelled by state law, when in fact they were contrary to law. Smith Decl., Ex. 5. A jury

could find for plaintiffs on the capacity to deceive issue because Liberty Mutual's conduct in this

case reflects its standard practices, not just isolated conduct. Meitler Decl. at ¶ 4; Meitler Dep.

1   at pp. 26-31.  A jury must also decide whether plaintiffs' damages are the result of Liberty
2   Mutual's conduct or their own failure to sign and return the forms despite repeated requests.
3   Therefore, Liberty Mutual's motion for summary judgment on plaintiffs' CPA claim is denied.
4           The Washington Supreme Court has declared that insurers have a duty of good faith to
5   their policyholders "and to succeed on a bad faith claim, a policyholder must show the insurer's
6   breach of the insurance contract was unreasonable, frivolous, or unfounded."  Smith v. Liberty
7   Ins. Co., 150 Wn.2d 478 (2003).  The determination of reasonableness must be made in light of
8   all the facts and circumstances of a particular case.  See, e.g., Anderson v. State Farm Mut. Ins.
9   Co., 101 Wn. App. 323, 329-30 (2000).  "[A]n insurer must deal fairly with an insured, giving
10  equal consideration in all matters to the insured's interests."  Tank v. State Farm Fire & Cas.
11  Co., 105 Wn.2d 381, 385-86 (1986).  In light of that duty, an insurer acts in bad faith when it
12  "overemphasizes its own interests."  Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323,
13  329 (2000) (citation omitted).  In this case, Liberty Mutual unilaterally added, and billed
14  plaintiffs for, earthquake coverage that it admits they expressly declined.  They did so to protect
15  themselves from a later claim that plaintiffs had such insurance.  Meitler Dep. at pp. 26-27
16  (explaining that Washington shows a "significant earthquake risk" and "the company is at risk
17  without getting something signed from [insureds] that they are rejecting the coverage.").  Liberty
18  Mutual's representative further explained why the company requires a signed declination form,
19  even though it is not required under Washington law:

20          There is a court system that could rule against any – you know, we wanted the extra
            protection to have the signed form, of our worry of losing if there is an earthquake, if Mr.
21          Childress – if there was an earthquake post him not returning the rejection form, would
            we be able to defend that and be able to exclude earthquake from his policy?  Our
22          determination was we are in a better – we are in a better company position to either obtain
            the rejection form or add the coverage.
23
24  Meitler Dep. at 28.  Based on that testimony and the facts of this case, a reasonable jury could
25  conclude that Liberty Mutual acted unreasonably by placing its own pecuniary and risk-
26  avoidance interests above the interests of its insured.  Therefore, Liberty Mutual's motion for
27  summary judgment on the bad faith claim is denied.
28  ORDER REGARDING CROSS MOTIONS
    FOR SUMMARY JUDGMENT - 10

**III. CONCLUSION**

For all of the foregoing reasons, the Court DENIES Liberty Mutual's motion for summary judgment (Dkt. #27) and GRANTS plaintiffs' motion for partial summary judgment regarding liability on their breach of contract claim (Dkt. #44).  The remaining issues include plaintiffs' CPA and bad faith claims and the amount of damages related to plaintiffs' breach of contract claim.  The parties are directed to attempt settlement with the guidance given by the Court in this order and during oral argument.


DATED this 7th day of February, 2011.



MM S Casnik
Robert S. Lasnik
United States District Judge